110, 1290, Elite Staffing v. Organic Farming May it please the Court. Counsel. Good morning. My name is Matthew Gnafo. I represent appellant in this matter, Elite Staffing. I'd like to reserve two minutes for rebuttal, please. Your Honors, the circuit court decision is against the manifest way of the evidence in that the injury is not in the course of employment, nor did it arise out of the employment. Now, what we have here is a forklift driver who went to grab lunch. Now, central to the commission's decision is the following sentence. The arbitrator finds there is no real dispute that the petitioner was on a company errand at the time of his injury. Well, Elite feels this is a fully disputed issue. Taking this conclusion for granted, the commission awarded benefits pursuant to both Vogelpol and Kelly. It's my position that these cases are distinguishable based on the facts of the present case. Well, what actually happened here? Okay. It appeared that, is there any dispute that the employees that day couldn't have the usual lunch from the catering service? It appears that they worked through their normal lunch and the catering service was gone. All right, so it appears that somebody would have had to leave the premises, which I would agree, in and of itself, an employee that's free to go and come and go as they can and go out to have lunch, an accident after that wouldn't necessarily be in the course of employment. But this really wasn't a personal errand. Wasn't it taken under the limited permission from the supervisor for a purpose suggested by the supervisor and the need because of the circumstances? He didn't just take off. Wasn't this discussed in advance by the supervisor and did the supervisor give him permission to do this? I would say that it wasn't necessarily discussed in advance. The issue came up that it was too late for them to get the catering truck lunch. They wanted food. Apparently, no one had brought their food. That could also have been an option that day that people could bring their own food. So it was decided that, okay, we're going to go out and get lunch. We're going to get burritos from this fajita place. And this is going to benefit all the employees that were there. He just didn't go out for lunch for himself. He went out with the permission of the supervisor to get lunch for the whole crew, right? This is true. Okay. So why isn't that in connection with his job, then? It's a personal interest, Your Honor. I mean, one's person, one's nutrition isn't necessarily going to be a benefit to the lead staff. I mean, we've got a line here from the arbitration decision. Petitioner was clearly on an errand that benefited his employer to further the respondent's interest in keeping its workers fed. Now, we all agree that food isn't Is that a flawed reason? Don't people have to eat? People absolutely have to eat. But I would say that that's a personal interest, Your Honor. We need food, shelter, clothing. Now, what if a respondent was going to leave work to look in an apartment? A landlord could only show an apartment to a respondent, and maybe some of his co-workers were going to live there. Well, the answer is it's totally unconnected to the job. As this lunch was, Your Honor. Now, being able to have nutrition during the course of a day at work, I think you can make an argument, is part and parcel of what you're doing. People have to normally have nutrition during the course of the day. So your argument is you've got two choices. They remain hungry all day, or they're on a personal frolic, apparently. Well, you could have brought his lunch as well. I mean, there weren't. Okay, let's take that example, okay? Assuming that everyone on the premises bring their lunch, and they have a lunch hour. And they're in a lunch room or they're somewhere on the premises of the employer. If there's an injury or an incident that occurs, would that be compensable, in your mind, during the lunch hour? During the lunch hour, if he was on the premises? Yes. I mean, it depends how much control that the employer had over the circumstances of that lunch hour, Your Honor. I believe that's the standard set forth in the Kluge case. So if it's like schools and open campus, no? Closed campus, yes? I would say that that would be accurate, Your Honor. Well, one thing I want to clarify, and you're throwing in a good response. You're saying, well, they had the choice to bring the lunch. And, yeah, that's an argument that would weigh heavily in your favor. In reading the facts, is it clear that this, you know, was a lack of the catering service just happened to occur that day? Or was this going on all week and they could plan in advance? I would say that that's absolutely not clear that they could have planned this in advance, according to the record. But if it was something that just happened that day and suddenly they realize they're going to be without food unless somebody leaves to get food, isn't that a little bit different than knowing the day before you have a choice to bring lunch? You're arguing like it's a fact. Like he knew he could have brought lunch. That's not clear from this record, is it? I just feel that it's a distinction to make this out as a company errand, as the court, the commission, pointed out in the Vogelpol case. Now, in that case, we've got a janitor who shows up for work. He realizes that there's no rags for him to perform his job duties. This is apparently an integral part of what he needs to do his work that day. So while he's on his lunch that day, he makes arrangements. Someone else makes the arrangements. He's going to stop at a hospital, pick up the necessary items, rags that he needs to perform his job duties. Now, there just seems to be more of a relationship to work in that situation, making that a company errand that is missing in the present facts here, Your Honor. Didn't he testify that Segura told him to go pick up the food? I'm sorry, Your Honor? Didn't he testify that Segura, his supervisor, told him to go get the food? I would say it's disputed. I mean, what did he say? Excuse me. There's no question it's disputed, but that wasn't my question. Did he testify that his supervisor told him to go get the food? I believe he did. Also, when asked if he wanted a burrito from a restaurant called Fajitas, plaintiff responded, yeah, I'll go. If the commission believed that he was told to go get the food by his supervisor, why doesn't it arise out of it in the course of his employment? I would dispute the fact that I don't feel that that's a manifest way that he actually was told. I feel that it's not a black and white issue, Your Honor. He said he was told. I mean, the supervisor. Who said he wasn't told? I'm sorry? Who said he wasn't told? The supervisor testified that he said, yeah, I'll go. I mean, that's more like volunteering than being ordered to go, Your Honor. Paul, think about what you're saying. The supervisor says, you know, that he volunteered. He says the supervisor directed him. The commission is the fact-finding tribunal here. So, how do you win on that basis? Or why should you win on that basis? Where's the manifest weight against, you know, the employee here? I understand your argument, Your Honor. Right? And I understand your argument. So maybe we'll agree or disagree, but I think that ultimately the commission is the fact-finder, weighing the credibility and believability of the witnesses, has the right to make that decision. That's true, Your Honor. I do believe that the facts in this case distinguish themselves from both Vogelpol and this Kelly case that is also mentioned in the commission decision and circuit court decision. And that is in summary form what? What is the distinguishing feature in your mind between this case and those cases? Obvious company, Aaron, in Vogelpol. He's going to get a necessary tool to complete his work duties that he needs to do that day. In Kelly, there is a pattern of conduct that establishes that going to get food for his coworkers was part of his daily routine. In the facts of that case, twice a day, four days a week, he drives to McDonald's to get breakfast and lunch for the coworkers. This is an established routine. It's been going on for a long time. It's understood that this is what he's going to be doing every day as part of his work duties. In this case, it's in fact, in the facts, it in fact states that Petitioner Orlando Max never before went out to get lunch for his employees and coworkers. Okay. So what you're saying is that goes to the voluntariness of his going and doing. Is that what you're saying? Because it seems to me this case rests upon, as I think my colleagues have said, was he directed to go? And we have dispute as to whether he was directed. He says yes. Supervisor, employer's representative says no. Correct. So what you're trying to do is bolster the corporate or the employer position. And you're saying that because it was an isolated incident that somehow destroys a little bit the credibility of the claimant, right? Well, not necessarily destroying the credibility of the claimant, but it seems like these cases that are relied upon by the lower tribunals are distinguishable on the facts of this case. Okay. Okay. Yeah, they're distinguishable. There's no question they're distinguishable, but so be it. The law still talks about direction and control, doesn't it? The law does talk about direction and control. And if you have evidence here of direction and control, albeit disputed, I mean, the claimant's saying I was directed and controlled to go and get these burritos or whatever. Right. Your job is to try to undermine that credibility of that individual. Absolutely. I mean, this was an isolated event. It wasn't something that occurred every day like in Kelly. Let's turn around and answer this question. Aside from whether it was an isolated event, if in fact it could be established clearly that he went to get lunch for the coworkers and it was in fact believed clearly that it was done at the direction of the supervisor, wouldn't that be sufficient? Does it have to be a pattern? If in fact the supervisor did clearly tell him, look, today your job is to get lunch for your coworkers, what's the result in that? Under those specific circumstances, under that hypothetical, you're absolutely right. That would be covered, Your Honor. And who decides if it's true? Commission, right? See my point? I see your point. I just believe that we have a good argument based on distinguishing facts from cases that relied upon by the lower courts. I understand. Likewise, that was the in the course of argument. Regarding the arising out of the employment, we feel that's against the manifest way that the evidence as well. Now, he's a forklift driver. He drives around in a warehouse, something like that. Nothing as part of doing that job increases his risk as being in a motor vehicle accident. I think we can all agree there. Now, courts have denied several lunchtime accidents based on lack of increased risk of injury. We've got the Lynch case, a claimant slipped and fell on an icy sidewalk returning from a restaurant where she had purchased breakfast. The court determined in our judgment the claimant's injury cannot be said to have risen out of it in the course of this employment to any greater extent than that of the ordinary fall in the ice suffered, excuse me, by an employee who voluntarily elects to go outside his place of employment and eat food. You're aware of the Stembridge case, right? I'm sorry, Your Honor? You're aware of the Stembridge builders case, right? Actually, I do not review that case. I'm preparing for these oral arguments, Your Honor. You really should because I think it's right on point. Basically, what it holds is that there's a risk of accident. If it's necessitated by the employment, the risk incidental thereto become the risk of employment. Basically, I'm suggesting what it holds is that as long as the employee is acting in furtherance of the employer's business, in this case, at the direction of the supervisor, driving a car off the premises does not relieve the employer of responsibility for the accident. Take a look at Stembridge. Okay. There's also the Ely case, which I believe points out that same conclusion. The court noted the claimant went to the restaurant of her own volition. The trip was not occasioned by the demands of her employment. I think we can agree on that. Absolutely, Your Honor. And I think where the disagreement comes from is whether this trip was really part of Respondent's business. And I think that the claimant... The argument is in the course of, not arising out of. Because if it's in the course of, it necessarily is arising out of. He was driving a motor vehicle in the course of his employment. If that's the case, then the accident that he gets into arises out of his employment. So your argument is in the course of. There's no argument on arising out of. I believe there is, Your Honor. Wait a minute. You believe that if it's in the course of, there's an argument about whether it arose out of? Well, both in the course of and arising out of. That's not my question. If it is in the course of, tell me how it could not possibly, how it couldn't be arising out of. If driving a car, a motor vehicle, is in the course of his employment, how could the accident not arise out of it? I see where you're going. The whole argument is in the course of. There's no argument on arising out of. Arises or falls in the course of. Now include, the Supreme Court did point out, where lunch period is not subject to employer's control or restricted in any way, the employee being free to go where he will at the time, and that employee is injured on a public street. The injury does not arise out of the employment. Now, I understand if he's already in the course of his employment when he is traveling on the street, that that argument does hold up what you were saying there. I'm sorry, Mr. Counselor. Do you have time on rebuttal? Thank you. Counsel, please. May it please the Court. My name is Frank Kress on behalf of Apelli Orlando Max. The issues we have presented to you are absolutely questions of fact that Your Honor pointed out quite clearly. The commission is the final arbiter on those issues of fact. And the way I see it, the question is, was the appellee on his personal lunch break or was he on some sort of errand that he was directed to go on by his employer? We had some conflicting testimony in this matter. The appellee testified that he was directed to go fetch lunch for his coworkers and his supervisors. And witnesses on behalf of the appellant testified that he went on a lunch all by his own, on his own volition. It was a volunteer. He was a volunteer to go get lunch. Excuse me. Which is why I think the Vogelpol case is absolutely on point. In that case, as you know, the injured worker was injured while fetching rags during his lunch break. A tool necessary, as counsel pointed out, for that employer to perform, for the employees of the employer to perform the tasks of their job. In this instance, I think that the burritos are absolutely analogous to the rags. Those are tools that are used to keep those employees going and on the job. The rags are the burritos. It's the same case. Even if we have a volunteer situation here, we've got something where an injured worker was injured while in the scope of his employment. Is this case going to turn on that? Do you want us to find that the burritos are the same thing as the rags? I think it's absolutely analogous. Okay. Let me ask you this. If, in fact, the employer had not directed him to leave the premises to get lunch for the coworkers, would the result here be the same? I believe it would be. It would be? I believe it would be, based upon Vogelpol and the fact that there would be a volunteer aspect to it. So you're saying that if somebody has an unrestricted lunch hour and they drive off for lunch and it has nothing to do with the employer or the supervisor, they're going to be happensite? I believe if there was a task, such as getting rags or fetching burritos for that employer, and that was a predetermined aspect of that lunch, it would be furthering So it wasn't a predetermined direction. It wasn't a task. Well, then I believe it wouldn't be work-related. Obviously, if people go off to lunch on their own lunch hour unrestricted, with nothing to do, they're not going to be happensite, are they? Absolutely not. Okay. That was my question. So really, it turns on a question of fact within the province of the commission. Absolutely. This is absolutely a question of fact, and the manifest way of the evidence in this case absolutely supports the finding that the commission came up with. Thank you. I don't think that there are any issues that are unclear in this matter. I think it's a manifest fact. It's manifest because? Because it's an issue of fact. Was this injured worker injured while on his own personal lunch? Well, we know that. But what's manifest mean? What's manifest mean? Yeah. I mean, what we have is a he said, he said. We have a he said, he said, and the commission found in favor of my he. And if the commission found that way, every subsequent level of appeal must defer to that commission judgment. Unless an opposite conclusion was clearly determined. Yes, absolutely. I mean, there are. It's not an unfettered standard. I mean, there has to be some interpretation of what it means, right? Yes. The manifest way of the evidence standard. A decision is contrary to the manifest way of the evidence only when the court determines that no rational trier of fact could have agreed with the commission's decision. So as a rational trier of fact, I believe you could agree that this particular injured worker was on a company errand at the time of his injury, and therefore his accident arose out of his employment. Thank you, counsel. Thank you. Mr. Bonnell. Just very quickly, Your Honor, I'd just like to point out I believe there's an absolute distinction between rags and burritos. There's a tool involved here as the rag that the claimant needed to do part of his job. This is a burrito, on the other hand. It's sustenance for each and every one of us. And having nothing to do with the job. While it's important that we're not hungry while at work, there are several other options for getting food that could have been. But not that day. There was no food on the premises. No food on the premises that day. Could a man operate without sustenance? He could have gone to any number of places to eat. Not necessarily. I mean, you know, the argument is being made that he was directed to a certain place to get certain food, and this is, you know, basically a tool needed for work. Now, what if he came back with hamburgers? Now, that would be a different tool that he went out and got as part of the job. Now, he wasn't directed. I think it's whether or not in terms of, again, whether or not he was directed to do that. And that's really the whole issue. Correct, Your Honor. As I pointed out during my argument, there's a distinction. You feel the evidence doesn't support that conclusion? Correct. Thank you very much. The court will take the matter under advisory for disposition.